**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NEW JERSEY MANUFACTURERS INSURANCE COMPANY**, | |
| Plaintiff, | Civil Action No. 24-6441 (ZNQ) (RLS) |
| v. | **OPINION** |
| **SUNRUN INC.**, *et al*., | |
| Defendants. | |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Compel Arbitration and Stay Proceedings filed by Defendants Sunrun Inc. and SunRun Installation Services Inc. (collectively "Defendants"). (ECF No. 4.) Defendants filed a Brief in Support of their Motion, ("Moving Br.," ECF No. 4-1), along with a copy of the Sunrun Power Purchase Agreement ("PPA") and the original Complaint. (ECF Nos. 4-2, 4-3.) Plaintiff New Jersey Manufacturers Insurance Company ("Plaintiff") filed an opposition with a copy of the PPA and Complaint ("Opp'n Br.," ECF No. 10), to which Defendants submitted a reply. ("Reply Br.," ECF No. 11.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Defendants' Motion to Compel Arbitration and Stay Proceedings.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff instituted this action in Mercer County Superior Court by filing a Complaint on or about December 11, 2023.[1] ("Compl.," ECF 4-3.) Plaintiff is the insurer and subrogee of Robert and Megan Peterson (collectively, "the Petersons").[2] (*Id.* ¶ 2.) The Complaint alleges causes of action for negligence, breach of warranties, and breach of contract stemming from Defendants' purportedly negligent installation of solar panels on the roof of the Petersons' home. (*See generally id.*) Sometime after installation of the solar panels, the Petersons discovered "water damage and rot" on the roof, resulting in $100,373.66 in property damages. (*Id.* ¶¶ 6, 14.)

The allegations in the Complaint arise from the PPA entered into by Robert Peterson and Defendants on December 14, 2017. The PPA is a thirty-page document with a table of contents. ("PPA," ECF No. 4-2) According to the PPA, Robert Peterson and

> Sunrun Installation Services Inc., a Delaware corporation, together with its successors and Assignees . . . as of the Effective Date [enter into this agreement] for the sale and purchase of all electric energy generated by a solar photovoltaic system . . . to be installed on or at [the Peterson's] home. . . . Sunrun is pleased to provide you with solar electric power for a twenty (20) year term.

(PPA at 1.) Robert Peterson signed his initials at the end of each section, confirming that he is bound by the terms of the PPA. Section 11 of the PPA includes an arbitration provision that

---

[1] Defendants allege they were served with process on April 24, 2024, which is why they removed the case to federal court on May 24, 2024. Plaintiff does not challenge the timeliness of removal.

[2] There is no dispute that Plaintiff is a subrogee of Robert and Megan Peterson. *See In re Frescati Shipping Co., Ltd.*, 886 F.3d 291, 309 (3d Cir. 2018), *aff'd sub nom. CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd.*, 589 U.S. 348 (2020). "Subrogation itself is not unusual; in general terms, it 'simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against a third party.'" *Id.* (quoting *US Airways v. McCutchen*, 569 U.S. 88, 97 n.5 (2013). Most often, as is the case here, subrogation arises in the insurance context as a procedural mechanism to allow an insurer (the subrogee) to step into the shoes of its insured (the subrogor) after it has compensated the insured for harm caused by a third party. *Id.* As such, the PPA which was signed by Robert Peterson is binding upon Plaintiff, the insurer and subrogee of Robert Peterson.

governs "Dispute Resolution; Arbitration; Class Action Waiver." (*Id.* at 16–17.) Relevant here, sub-section (b) of Section 11 states in all capital letters:

> ARBITRATION. IF THE PARTIES CANNOT RESOLVE THE DISPUTE INFORMALLY, THE DISPUTE, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, WILL BE RESOLVED BY BINDING ARBITRATION BEFORE ONE ARBITRATOR. ARBITRATION MEANS YOU WAIVE YOUR RIGHT TO A JURY TRIAL AND ALL DISPUTES SHALL BE DECIDED BY AN ARBITRATOR. THIS AGREEMENT TO ARBITRATE DISPUTES IS GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA"). THE ARBITRATION SHALL BE ADMINISTERED BY JAMS PURSUANT TO ITS STREAMLINED ARBITRATION RULES & PROCEDURES. THE ARBITRATION WILL BE OVERSEEN BY THE JAMS OFFICE NEAREST TO THE HOME. JUDGMENT ON THE AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THIS CLAUSE SHALL NOT PRECLUDE PARTIES FROM SEEKING PROVISIONAL REMEDIES IN AID OF ARBITRATION FROM A COURT OF APPROPRIATE JURISDICTION. THE ARBITRATOR MAY, IN THE AWARD, ALLOCATE ALL OR PART OF THE COSTS OF THE ARBITRATION, INCLUDING THE FEES OF THE ARBITRATOR AND THE REASONABLE ATTORNEY FEES OF THE PREVAILING PARTY.

(*Id.*) Like he did in other sections of the PPA, Robert Peterson initialed the bottom of Section 11 indicating that he has "read, understood and accepted the provisions set forth in this Section." (*Id.*)

After being served with process, Defendants removed the case to federal court on May 24, 2024. (ECF No. 1.) Thereafter on May 31, 2024, Defendants filed the instant Motion to Compel Arbitration and Stay Proceedings based on the arbitration provision set forth above. (ECF No. 4.) There is no dispute over whether the parties validly entered into the PPA, nor is there a dispute about the scope of the arbitration agreement. Instead, the parties dispute whether the arbitration provision in the PPA is enforceable.

## II. <u>JURISDICTION</u>

The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

## III. <u>LEGAL STANDARD</u>

"The FAA federalizes arbitration law and 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. . . .'" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Courts are authorized to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Under Section 3 of the FAA, parties may "apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3). The FAA "establishes a policy in favor of arbitration that requires the liberal reading of arbitration agreements and the resolution of any doubts in favor of arbitration." *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x 466, 467 (3d Cir. 2007) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25).

Before deciding a motion to compel arbitration, a court must ascertain whether "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 154 (3d Cir. 2014) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). To conduct this inquiry, the court shall apply "ordinary state-law principles that govern the

4

formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

### IV.    DISCUSSION

As a preliminary matter, when determining whether a valid arbitration agreement exists, a court must first decide whether to use the Rule 12(b)(6) or Rule 56 standard of review. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The parties do not address in their papers which standard applies. For the reasons set forth below, the Court concludes that a Rule 56 summary judgment standard is appropriate.

The Rule 12(b)(6) standard applies when arbitrability is "apparent, based on the face of a complaint, and documents relied upon in the complaint." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks omitted). However,

> [w]here the complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record.

*Noonan v. Comcast Corp*, Civ. No. 16-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017) (citations omitted). When applying the Rule 56 standard to a motion to compel arbitration, a court shall grant the motion when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986). When utilizing the Rule 56 standard, "the court must draw all reasonable inferences in favor of the nonmoving party." *Guidotti*, 716 F.3d at 772. In the past, if the complaint and its supporting documents were unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with

additional facts sufficient to place the agreement to arbitrate in issue, then "the parties [were] entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question" under a Rule 56 summary judgment standard. *Id.* at 776. However, the Third Circuit in *Young v. Experian Information Solutions, Inc*, recently reversed its view, and held that "[i]n the absence of a factual dispute, there is nothing to discover and thus no need to delay a decision on the motion to compel." 119 F.4th 314, 320 (3d Cir. 2024).

Here, the Complaint does not mention or rely upon the arbitration agreement; nor does Plaintiff attach the agreement as an exhibit to the Complaint. (*See generally* Compl.) Consequently, the Court must look to documents extraneous to the pleadings to determine whether the parties have agreed to arbitrate this dispute. Given that the question of arbitrability here cannot be resolved without considering evidence beyond the pleadings, pursuant to *Guidotti* it would be inappropriate for the Court to apply a Rule 12(b)(6) standard to Defendants' motion. *See Guidotti*, 716 F.3d at 774; *Young*, 119 F.4th at 319 ("Here, the District Court correctly determined . . . that the Rule 56 summary judgment standard applies to the claims at issue because [the] Complaint ma[de] no reference to the [] arbitration agreement; it d[id] not attach the agreement as an exhibit; and it d[id] not base the claims on the existence of the agreement"); *see also Singh v. Uber Technologies Inc.*, 939 F.3d 210, 218 (3d Cir. 2019) ("The centerpiece of [*Guidotti*'s] framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents"). Accordingly, the Court will address this Motion under a Rule 56 standard.

Next, the Court must determine whether an enforceable arbitration agreement exists. Defendants contend that the Court should grant their Motion to Compel Arbitration and "stay or dismiss this action pending completion of the arbitration proceedings" because "[t]he PPA's

provision to arbitrate is valid and enforceable." (Moving Br. at 2.) Defendants believe the "causes of action alleged in the Amended Complaint are explicitly covered by the Arbitration Agreement and, therefore, are subject to arbitration." (*Id.*) Defendants add that Robert Peterson entered into a valid arbitration agreement because it is clear, unambiguous, and explains that the party to be bound is waiving his or her right to go to court and to have a jury trial. (*Id.* at 8.)[3] Lastly, Defendants argue that the arbitration agreement in the PPA is not unconscionable because although the PPA was offered as a "take-it-or-leave-it basis," this was a commonplace business transaction, and there is nothing in the record to suggest the arbitration agreement is unfair. (*Id.* at 12–13.)

Plaintiff challenges the enforceability of the arbitration clause first on the basis that it is ambiguous because it does not clearly state that arbitration is the exclusive remedy; instead, it merely defines what arbitration is. (Opp'n Br. at 5.) Plaintiff adds that the "ambiguity is compounded by the part of the clause allowing parties to seek provisional remedies from a Court of appropriate jurisdiction." (*Id.*) Moreover, Plaintiff argues that paragraph 11(c) of the PPA, which outlines the procedure for instituting an arbitration hearing,[4] "further complicates the

---

[3] Defendant argues that the PPA is binding on Plaintiff because "[t]his Agreement is binding upon, and insures to the benefit of, the Parties and their respective heirs, executors, administrators, legal representatives, successors and assigns," which includes Plaintiff New Jersey Manufacturers Insurance Company. (*See* PPA at 18.) Plaintiff does not dispute that it is bound by the PPA.

[4] Section 11(c) provides in relevant part that

> [t]he arbitration hearing will take place in the federal judicial district of the Home, unless you and Sunrun agree to another location in writing. In order to initiate arbitration proceedings, you or Sunrun must take the following actions:
>
>> (i) Write a demand for arbitration. The demand must include a description of the Dispute and the amount of damages you are seeking. The form of Demand for Arbitration can be found under ADR Forms at www.jamsadr.com.
>>
>> (ii) Send three (3) copies of the demand for arbitration to the JAMS location at Two Embarcadero Center, Suite 1500, San Francisco, California 94111.

7

interpretation of the arbitration" provision because it "outlin[es] procedures for initiating arbitration without clearly stating that arbitration is effectively mandatory." (*Id.* at 6.) Plaintiff also challenges the "delegation clause" in the PPA as unenforceable because it does not "sufficiently explain that arbitration is a substitute for the right to seek relief in a judicial forum." (*Id.* at 7.)

"Under New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'"[5] *Levy v. AT&T Servs., Inc.*, Civ. No. 21-11758, 2022 WL 844440, at *3 (D.N.J. Mar. 22, 2022) (alteration in original) (quoting *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017)). "Therefore, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.'" *Id.* (quoting *Crawford v. Compass Grp. USA*, Civ. No. 14-02545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015)). "To manifest assent, 'an offeree must provide unqualified acceptance, which can be express or implied by conduct.'" *Id.* (quoting *Glob. TelLink Corp*, 852 F.3d at 265).

More generally, to prove the existence of a valid contract under New Jersey law, a party must show that: (1) there was a meeting of the minds; (2) there was an offer and acceptance; (3) there was consideration; and (4) there was certainty in the terms of the agreement. *Big M. Inc. v. Dryden Advisory Group*, Civ. No. 08-3567, 2009 WL 1905106, at *13 (D.N.J. June 30, 2009) (citing N.J. Jury Instr. Civ. 4.10 C); *see also Comprehensive Neurosurgical, P.C. v. Valley Hosp.*,

---

> (iii) Send one copy of the demand for arbitration to the other Party. You and Sunrun agree to receive service of process of the arbitration demand by registered or certified mail, return receipt requested, at your billing address and Sunrun's principal executive office, respectively.

(PPA at 16–17.)

[5] The parties do not dispute that New Jersey law applies; therefore, the Court applies it for the purposes of this Opinion. (*See* Opp'n Br. at 2 ("New Jersey law governs the interpretation of the PPA"); *see generally* Moving Br. (relying on New Jersey law)).

312 A.3d 243, 263 (N.J. 2024) (noting that a contract requires mutual assent and consideration, and that the parties agree on all essential terms).  With respect to arbitration agreements, New Jersey likewise requires that the agreement to arbitrate be "the product of mutual assent." *Kernahan v. Home Warranty Adm'r of Florida, Inc.*, 199 A.3d 766, 776 (N.J. 2019) (quoting *Atalese v. U.S. Legal Services Grp., L.P.*, 99 A.3d 306, 312–23 (N.J. 2014)).  Importantly, in *Atalese*, the New Jersey Supreme Court stated that,

> the arbitration clause [need not] identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration.  But the clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute.

*Atalese*, 99 A.3d at 315–16.  "*Atalese* stands for the proposition that an arbitration agreement is clearly enforceable when its terms affirmatively state, or unambiguously convey to a consumer in a way that he or she would understand, that there is a distinction between agreeing to resolve a dispute in arbitration and in a judicial forum." *Kernahan*, 199 A.3d at 778.  The Third Circuit has similarly held that "[b]efore a party to a lawsuit can be ordered to arbitrate . . . there should be an *express, unequivocal* agreement to that effect." *Kirleis*, 560 F.3d at 161 (quoting *Par-Knit Mills*, 636 F.2d at 54 (alterations and emphasis in original)).

Here, the Court finds that the PPA contains a valid and enforceable arbitration provision.  The record shows that Robert Peterson signed his initials at the end of each section, including the arbitration and class action waiver section.  According to the PPA, written above the signature line is a statement that explains, "[y]our initials indicate that you have read, understood and accepted the provisions set forth in this Section G(11)."  (PPA at 17.)  It is a fundamental tenant of contract law that one who signs an agreement understands its contents.  *See ACE Am. Ins. Co. v. Guerriero*, 738 F. App'x 72, 78 (3d Cir. 2018); *see also Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 690

9

(N.J. 2010) ("When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected."). As such, it can be presumed that Robert Peterson—and subsequently Plaintiff—understood the contents of the PPA, specifically the arbitration provision.

Importantly, the arbitration provision contains clear and unambiguous language that the Petersons were waiving their rights to sue or go to court to secure relief. The arbitration provision in the PPA states that

> IF THE PARTIES CANNOT RESOLVE THE DISPUTE INFORMALLY, THE DISPUTE, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, WILL BE RESOLVED BY BINDING ARBITRATION BEFORE ONE ARBITRATOR. ARBITRATION MEANS YOU WAIVE YOUR RIGHT TO A JURY TRIAL AND ALL DISPUTES SHALL BE DECIDED BY AN ARBITRATOR.

(PPA at 16.) Thus, this provision explains clearly and unequivocally that any dispute arising from the PPA will be determined by binding arbitration before one arbitrator. The provision then proceeds to expressly describe, "in some general and sufficiently broad way" what arbitration means, including that one waives their right to have a jury resolve the dispute. *See Atalese*, 99 A.3d at 315–16. By explaining what arbitration is, the arbitration provision at issue properly distinguishes between agreeing to resolve a dispute in arbitration in contrast to a judicial forum. *See Kernahan*, 199 A.3d at 778.

Moreover, although the PPA (and the included arbitration clause) may qualify as an adhesion contract because it was created on a take it or leave it basis, the Court agrees with Defendants that this fact alone is not a sufficient basis to render the arbitration clause unenforceable. In assessing whether an arbitration agreement is an adhesion contract, courts in this district consider several factors, including: the relative bargaining positions of the parties, the

subject of the agreement, any economic pressure motivating the adhering party, and any public policy interests. *See Falk v. Aetna Life Ins. Co.*, Civ. No. 19-00434, 2019 WL 4143882, at *5 (D.N.J. Aug. 31, 2019).

Here, the arbitration provision at issue gave the Petersons a meaningful choice—they could decline to sign it or revoke it within its provided revocation period. The PPA contains provisions throughout explaining that the signee can terminate the transaction at any time prior to midnight of the tenth day after the effective date. (*See e.g.,* PPA at 20, 25.) The PPA moreover includes an attached notice for cancellation and an explanation of that right. (*Id.* at 25.) As such, the Court concludes that the arbitration provision is enforceable, regardless of whether it is an adhesion contract. *See Baumwoll v. Brightview Senior Living, LLC*, Civ. No. 19-07278, 2020 WL 13543767, at *3 (D.N.J. Apr. 30, 2020) (granting a motion to compel arbitration and finding that the arbitration provision at issue gave [the decedent] a meaningful choice and thus was not an unenforceable adhesion contract). Accordingly, the arbitration provision at issue is valid and enforceable.

The Court need not discuss whether Plaintiff's claims fall within the scope of the arbitration agreement. The parties are not disputing the scope of the arbitration agreement, just its enforceability. Moreover, the PPA explicitly delegates scope to the arbitrator. (*See* PPA at 16 ("the dispute, including the determination of the scope or applicability of this agreement to arbitrate, will be resolved by binding arbitration")).

## V. <u>CONCLUSION</u>

For the reasons stated above, the Court will **GRANT** Defendants' Motion to Compel Arbitration and Stay Proceedings. (ECF No. 4.) An appropriate Order will follow.

Date: December 6, 2024

<u>s/ Zahid N. Quraishi</u>
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
